In re Andrew N. EZEKOYE, Debtor.

Andrew Ezekoye, Plaintiff,

v.

Ocwen Federal Bank FSB, Defendant.

Ocwen Federal Bank FSB, Movant,

v.

Ronda J. Winnecour, Trustee of the Estate of Andrew Ezekoye.

Bankruptcy No. 01–29942.
Adversary No. 02–2328.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 30, 2004.

Ronda J. Winnecour, Esquire, Pittsburgh, PA, Chapter 13 Trustee.

Andrew Ezekoye, New Kensington, PA, pro se.

Samuel J. Reich, Esquire, Pittsburgh, PA, for Ocwen Federal Bank, FSB.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Before this court is the motion of Defendant Ocwen Federal Bank FSB ("Ocwen") to strike and/or open a default judgment granted in the Court of Common Pleas, Allegheny County, Pennsylvania, and docketed there at GD–01–017451 (the "Default Judgment"). The parties consented to removal of the state court action to this court where Ezekoye filed his Chapter 13 petition.

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O). To the extent that non-core issues may have been raised in the pleadings, the principal parties, Trustee at Adv. Dkt. No. 22, Ezekoye at Adv. Dkt. No. 21 and Ocwen at Adv. Dkt. No. 23, have consented to entry of a final judgment by this court in this adversary proceeding.

The court will consider Ocwen's Motion to Strike and/or Open the Default Judgment as a motion for relief from judgment under FED. R. CIV.P. 60(b). *Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275, 1278 (9th Cir.1982) ("A federal court must take a case as it finds it on removal ... and if a state court has entered a final default judgment prior to removal ... the defaulting party ... must move to set aside the default pursuant to Federal Rule of Civil Procedure 60(b)") (citations omitted). *See also Pennsylvania National Bank & Trust Co. v. American Home Assur. Co.,* 87 F.R.D. 152 (E.D.Pa.1980) (proper procedure respecting the opening of a removed default judgment is FED.R.CIV.P. 60(b) which treats the default judgment removed from state court as though it had been validly rendered in the federal proceeding).

■ The Court of Appeals for the Third Circuit has on numerous occasions set forth the factors that a trial court must "consider and balance" in determining whether to grant relief from a default judgment:

(1) whether lifting the default would prejudice the plaintiff;

(2) whether the Defendant has a *prima facie* meritorious defense;

(3) whether the defaulting Defendant's conduct is excusable or culpable; and

(4) the effectiveness of alternative sanctions.

*EMCASCO Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir.1987). The Court of Appeals "further required the [trial] court ... to make explicit findings concerning these factors...." *EMCASCO,* 834 F.2d at 74.[2]

■ As discussed below, the court finds that (1) Ocwen has demonstrated by credible factual and legal allegations that it has meritorious defenses to Ezekoye's Complaint at GD–01–017451 on which the default judgment was taken; (2) Ocwen's own conduct in failing to defend against Ezekoye's Complaint rose no higher than excusable neglect, and was neither willful nor in bad faith; (3) Ezekoye cannot be

---

1. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. The court's jurisdiction is not at issue.

2. This court will apply federal procedural law and Pennsylvania substantive law in determining whether to grant relief from the default judgment. It should be noted, however, that procedurally there are few differences between the factors required by the Third Circuit under Fed.R.Civ.P. 60(b) and the factors required by Pennsylvania courts to open a default judgment. *Alba v. Urology Assocs. of Kingston,* 409 Pa.Super. 406, 598 A.2d 57, 58 (1991)(default judgment may be opened when the moving party (1) promptly files a petition to open the default judgment, (2) shows a meritorious defense, and (3) provides a reasonable excuse or explanation for its failure to file a responsive pleading).

prejudiced by relief from the default in that his own conduct in serving papers on an address of Ocwen, which Ezekoye knew or should have known was incorrect, caused the default; and (4) no lesser sanction than relief from the judgment is proper where, as here, a ministerial error by the Prothonotary of Allegheny County, on the instigation of Ezekoye, resulted in the entry of a judgment for damages without judicial determination of those damages as required by Pa. R. Civ. P. 1021(b) and 1037(b)(1).

### Factual [3] and Procedural Background

Ocwen's Memorandum in Support of Motion to Strike and/or Open Default Judgment, Adv. Dkt. No. 15, states that have been three legal proceedings involving Ocwen and Ezekoye that are relevant to understanding the disputes in this adversary proceeding: a mortgage foreclosure action (the "Mortgage Foreclosure Action"), a TILA action (the "TILA Complaint"), and the matter before this court (the "Perjury Complaint").

*Mortgage Foreclosure Action*

On November 22, 1996, Ezekoye executed with Long Beach Mortgage Company of California a mortgage securing a note in the amount of $131,250.00 which was assigned to Ocwen on November 27, 1996. The mortgage and assignment were recorded in Allegheny County. Ocwen brought the Mortgage Foreclosure Action, GD–98–00668, in the Court of Common Pleas of Allegheny County on the property after Ezekoye defaulted on the mortgage. On March 29, 2000, judgment was entered in favor of Ocwen against Ezekoye in the Mortgage Foreclosure Action by Judge Zeleznik. Adv. Dkt. No. 15, at 4.[4] Ezekoye

appealed Judge Zeleznik's order to the Commonwealth Court of Pennsylvania on May 1, 2000. The Commonwealth Court transferred the case to the Superior Court on August 31, 2000, and the appeal was dismissed on April 27, 2001. With the dismissal of the appeal, the findings of fact and conclusions of law of Judge Zeleznik's order of March 29, 2000, as memorialized in a written opinion on July 14, 2000, became final. Because the issues, facts and parties in the Mortgage Foreclosure Action are identical to those in the instant proceeding, Judge Zeleznik's findings of fact and conclusions of law are *res judicata* for this proceeding.

*The TILA Complaint*

On May 25, 2001, Ezekoye filed the TILA Complaint against Ocwen and Long Beach in the Court of Common Pleas of Allegheny County, at GD–01–010777, alleging violations of TILA and RESPA. *See* Adv. Dkt. No. 15 at Exh. I. A default judgment in that case was entered against Ocwen because Ezekoye served the TILA Complaint on Ocwen at an incorrect address. Ocwen first learned of the default judgment when informed by a clerk in the Prothonotary of Allegheny County's office when Ezekoye attempted to schedule a hearing to calculate damages. The default judgment was opened by Judge Wettick of the Court of Common Pleas and the debtor appealed to the Pennsylvania Superior Court, which appeal was quashed on November 16, 2001. The TILA action was removed to this court on July 3, 2002, and was subsequently dismissed, with prejudice, upon the joint stipulation of Ezekoye, Long Beach, and Ocwen, on November 5, 2002.[5]

---

3.  We have not recited all the facts, only those most pertinent to the decision herein.

4.  Judge Zeleznik memorialized the judgment in an opinion issued on July 14, 2000. Adv. Dkt. No. 15, Exh. G ("Zeleznik Opinion").

5.  *See* Adv. No. 02–2403 at Dkt. No. 11.

*The Action Before This Court: The Perjury Complaint*

On August 29, 2001, Ezekoye filed the Perjury Complaint in state court against Ocwen, GD–01–017451, alleging Ocwen's conspiracy and fraud as to the assignment of the mortgage and fraud regarding two of Ocwen's affidavits in the mortgage foreclosure action. *See* Adv. Dkt. No. 15 at Exh. A. The Prothonotary of Allegheny County entered a judgment of default on October 22, 2001, in the amount of $1,062,706 plus costs (the "Default Judgment").[6] Adv. Dkt. No. 18, Exh. 5 ("Notice of Order, Decree or Judgment") at 3 (unnumbered page). Ocwen never received notice of this lawsuit and became aware of the Default Judgment in March 2002 after Ezekoye domesticated the judgment in Florida and a Florida debt collector contacted Ocwen. *See* Adv. Dkt. No. 18, Exh. 8 ("Florida Judgment").

The question of whether Ocwen is to be afforded relief from the default judgment under Fed.R.Civ.P. 60(b) is now before the court.

## Meritorious and Sufficient Defense: Res Judicata

Ocwen argues that *res judicata* is a meritorious defense to the default judgment. In *Del Turco v. Peoples Home Savings Ass'n,* 329 Pa.Super. 258, 478 A.2d 456 (1984), the court defined *res judicata* to "encompass generally the effect of one judgment upon a subsequent trial or proceeding," a definition which includes both " 'technical' res judicata, or simply res judicata" (i.e., "effect of a judgment in a subsequent action between the parties based upon *the same cause of action*"), and

collateral estoppel (i.e., "effect on the parties in a trial on a *different cause of action*"). *Del Turco,* 478 A.2d at 460, quoting *Martin v. Poole,* 232 Pa.Super. 263, 336 A.2d 363, 366 (1975). The *Del Turco* court noted the elements that must be present for the doctrine of *res judicata* to stand.

... a concurrence of four conditions must be shown: (1) Identity in the things sued upon or for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality or capacity of the parties suing or sued.

*Del Turco,* 478 A.2d at 460, quoting *Martin v. Poole, supra,* 336 A.2d at 366. The *Del Turco* court considered the res judicata effect of a prior mortgage foreclosure action on the subsequent suit then before the court. The *Del Turco* court found that "[i]n a fundamental way, the subject matter, issues, facts and evidence in the instant suit are so inextricably interwoven with that of the first suit that further judicial consideration would be the relitigation of the same controversy." *Del Turco,* 478 A.2d at 462. The court went on to find that Restatement (Second) of Judgments § 22(2)(b) (1980) encompasses a situation "where, as here, two claims have such a measure of identity and are so inextricably intertwined that a different judgment in the second action would operate to nullify or substantially impair rights or interests established by the judgment in the first." *Del Turco,* 478 A.2d at 463.

This court finds that a meritorious and sufficient defense of *res judicata* is assertable by Ocwen based on the holding in *Del*

---

**6.** The Allegheny County Prothonotary Civil Docket Report at Exhibit 6 to Debtor's Opposition, Adv. Dkt. No. 18, states that it is a Quiet Title Action and lists the judgment amount at $1,001,000. Ezekoye submitted two separate requests to the Prothonotary of Allegheny County for judgment in the amounts of $252,166 and of $810,540, plus interest. Adv. Dkt. No. 18, Debtor's Opposition to Ocwen Bank's Motion, Exh. 6 ("Exemplification of Record"), at 6–7 (unnumbered pages). The total amount is $1,062,706.

*Turco* and the Restatement (Second) of Judgments § 22(2)(b) (1980). In its briefs and arguments before the court, Ocwen has demonstrated that the Perjury Complaint against Ocwen and the Mortgage Foreclosure Action judgment against Ezekoye have "such a measure of identity and are so inextricably intertwined that a different judgment in the second action would operate to nullify or substantially impair rights or interests established by the judgment in the first." *Del Turco,* 478 A.2d at 463.

Both the Perjury Complaint and the Mortgage Foreclosure Action involve Ezekoye and Ocwen. The gravamen of both the Perjury Complaint and the Mortgage Foreclosure Action is title to the Debtor's property.[7]

Judge Zeleznik's July 14, 200, Opinion in the Mortgage Foreclosure Action, Adv. Dkt. No. 15, Exh. G ("Zeleznik Opinion"), recited the following salient findings of fact:

1. Ezekoye executed a mortgage securing a note with Long Beach on November 22, 1996.

2. The mortgage was recorded in Allegheny County, Pennsylvania, and covers Ezekoye's residential real estate.

3. The mortgage was assigned to Ocwen Federal Bank on November 27, 1996, and the assignment was recorded.

4. There are no records of payment by Ezekoye to any party on the mortgage since November 1, 1997.

5. On January 22, 1998, Ocwen mailed a "welcome letter" to Ezekoye noti-

fying him that Ocwen would be servicing the loan by virtue of the assignment.

6. On February 14, 1998, Ocwen mailed the requisite pre-foreclosure Act 91 Notice.

7. Ezekoye applied for mortgage assistance but was denied when he refused to attend a hearing.

8. Ezekoye admitted he owed money on the mortgage.

The Zeleznik Opinion in the Mortgage Foreclosure Action also set forth the following conclusions of law:

A. Ezekoye had no valid defense to the allegations of Ocwen.

B. The RESPA Servicing Disclosure Statement, in which Long Beach indicated that it would service the loan, was only an estimate. The controlling language is found in the mortgage instrument which clearly gives the mortgagee or an assignee the right to service the loan.

This court finds that the central arguments of both Counts in the Perjury Complaint attempt to relitigate these findings of fact and conclusions of law by Judge Zeleznik.

Count I of the Perjury Complaint, entitled "Fraud", Adv. Dkt. No. 15, Exh. A, alleges that two affidavits submitted in the Mortgage Foreclosure Action by Julie Towers and Gregory Whitworth[8] contained incorrect, misleading and contradictory statements regarding certain facts and dates of actions by Ocwen with the intent to support a forged welcome letter that was never sent. This court finds that

---

7. The additional causes of action pleaded in the Perjury Complaint, fraud, perjury, quiet title, emotional distress and "damage to credit" are all related to the underlying dispute concerning Ocwen's mortgage on Ezekoye's property.

8. Ms. Towers was the Foreclosure Coordinator for Ocwen Bank. Mr. Whitworth was its Director of Default Servicing and Senior Counsel.

Ezekoye's allegation in Count I that the welcome letter was forged and never sent is inconsistent with Judge Zeleznik's finding that there was a welcome letter and that the welcome letter was sent to Ezekoye. *See* Zeleznik Opinion, Adv. Dkt. No. 15, Exh. G. Further, this court has examined the affidavits in question and finds that the inconsistency among dates alleged by Ezekoye is immaterial. Consequently, the court finds there is no merit in Ezekoye's allegations of fraud and perjury in Count I of the Complaint.

■ Regarding the allegations of perjury, in addition to the immateriality of the dates challenged by Ezekoye, the court notes that there is no civil cause of action for perjury in Pennsylvania. *Ginsburg v. Halpern*, 383 Pa. 178, 118 A.2d 201 (1955).

Count II of the Perjury Complaint is styled "Action to Quiet Title" to Ezekoye's residential property by which Ezekoye seeks to "discharge and terminate" Ocwen's interests in and liens on the property.[9] On its surface, therefore, it is inconsistent with Judge Zeleznik's finding that Ocwen had established its right to carry out the mortgage foreclosure. The Zeleznik Opinion further and explicitly concluded that the RESPA disclosure was only an estimate, that either the mortgagee or assignee had the right to service the mortgage and that Ezekoye's failure to obtain PHFA financing was not due to any

failure of Ocwen but rather to Ezekoye's refusal to attend a meeting. Zeleznik Opinion, Adv. Dkt. No. 15, Exh. G.

The court concludes that the principal arguments and issues in Counts I and II of the Perjury Complaint were adjudicated in the Mortgage Foreclosure Action, that successful litigation on the arguments asserted by Ezekoye would undermine and negate the central findings and conclusions of the state court in the Mortgage Foreclosure Action and, therefore, Ocwen has established a meritorious and sufficient defense to Ezekoye's counts in the Perjury Complaint on the grounds of *res judicata*.

### Meritorious Defense of Waiver

Ocwen contends that Ezekoye waived the claims in the Perjury Complaint, citing PA.R.CIV.P. 1020(d)(1) and (d)(4) which provides for the mandatory joinder of causes of action arising from a transaction or occurrence against the same party.[10] *See* Adv. Dkt. No. 26, Ocwen Federal Bank's Brief in Support of Motion to Strike and/or Open Default Judgment at 9.

Ocwen refers us to the reasoning in *Hineline v. Stroudsburg Electric Supply Company, Inc.*, 402 Pa.Super. 178, 586 A.2d 455 (1991), *appeal denied* 528 Pa. 630, 598 A.2d 284 (1991)(TABLE), for guidance as to when causes of action must be joined. The *Hineline* court held that to determine

---

**9.** Ezekoye alleged in this Count that Ocwen violated his "RESPA Disclosure rights", damaged his credit, and caused him emotional distress. He asserted entitlement to punitive damages in an amount "not to be less than triple the Compensatory damages". Adv. Dkt. No. 15, Exh. A, Perjury Complaint, "Wherefore" clause of Count II. The court notes that Ezekoye asserts a cause of action in tort for causing emotional distress but does not indicate whether it is intentional or negligent, nor does the Perjury Complaint include averments necessary to establish grounds for either of the emotional distress torts recognized in Pennsylvania law. This court is un-

aware of any recognized tort for "damage to credit."

**10.** Rule 1020(d)(1) provides: "If a transaction or occurrence gives rise to more than one cause of action against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person .... (4) Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action."

whether "a transaction or occurrence gives rise to more than one cause of action," the court must "examine the factual underpinnings of [the] two complaints and determine whether the causes of action [in the two complaints] arose from the same transaction or occurrence, that is, whether the claims involve a common factual background or common legal questions." *Hineline*, 586 A.2d at 458. The court elaborated:

> Should these two cases have gotten past the preliminary objection stage, the same pretrial discovery would have taken place in both cases and the same witnesses, including the parties, would be required to appear at two separate trials. Two separate juries would have had to be impanelled to hear virtually the same evidence and resolve many of the same legal questions. This kind of repetition is precisely what Rule 1020(d) was intended to avoid.

*Hineline*, 586 A.2d at 458.

In its discussion of the TILA Complaint at GD–01–010777, Ocwen contends that "[a] comparison of the amended complaint at GD–01–010777 to the instant complaint [GD–01–017451] clearly demonstrates that the two complaints involve the same incidents.... Even the language is almost identical." Adv. Dkt. No. 26, Ocwen's Brief in Support of Motion, at 7. The court's examination of the two complaints supports Ocwen's contentions.

Ezekoye has offered no objection or counter-argument to Ocwen's waiver defense. Thus, the waiver defense needs no further evidence in support and is a bar to recovery on the Perjury Complaint.

The court finds that Ocwen has adequately demonstrated a meritorious defense in waiver of the causes of action in GD–01–017451 as a result of the application of PA. R. CIV. P. 1020(d)(1) and (d)(4), which Ocwen has supported by an allegation of facts and statement of the law beyond a mere denial or conclusionary statement.

## Meritorious Defense of *Lis Pendens*

Ocwen contends that the defense of *lis pendens*, pendency of a prior action, also operates in the instant case. Ocwen notes that the court in *Cardenas v. Schober*, 783 A.2d 317 (Pa.Super.2001), *appeal granted in part*, 568 Pa. 713, 797 A.2d 909 (2002), discussed the standard for the defense of *lis pendens*:

> In order to find *lis pendens* a valid objection to the immediate entertainment or continuation of a suit, the objecting party must demonstrate to the court that in each case "the parties are the same, and the rights asserted and the relief prayed for are the same".... Generally, the pendency of a prior action, or *lis pendens*, may be pleaded either as a preliminary objection, Pa. R.Civ.P. 1017(b)(5), or in the answer.

*Cardenas*, 783 A.2d at 327, quoting *Virginia Mansions Condominium Ass'n v. Lampl*, 380 Pa.Super. 452, 552 A.2d 275, 277 (1988).

Ocwen asserts, and the court accepts, that the issues in the TILA case and the Perjury Case are the same. Regarding the rights asserted, Ocwen states:

> In this case [GD–01–017451, Ezekoye v. Ocwen], Mr. Ezekoye's complaint is virtually identical to his complaint in the TILA case [GD–01–010777, Ezekoye v. Ocwen/Long Beach]. Forty-eight of the 51 averments in Mr. Ezekoye's present complaint are either identical to, or identical in spirit, to his claims against Ocwen in the TILA case. Thus, the defense of *lis pendens* applies in this case.

Adv. Dkt. No. 15, at 21.

Ezekoye has offered no objection or counter-argument to Ocwen's *lis pendens*

defense. Thus, the *lis pendens* defense needs no further evidence in support. The court finds that Ocwen has adequately demonstrated a meritorious defense of *lis pendens* that is a complete bar to Ezekoye's recovery.

### Ocwen Brought This Motion Within Reasonable Time

A motion under Fed.R.Civ.P. 60(b)(1) must be made "within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken." FED. R. CIV. P. 60(b). The default judgment in the Perjury Complaint was entered on October 22, 2001. Dkt. No. 18, Exh. 5 at 3. Ocwen contends it first learned from a debt collector in Florida of the entry of the default judgment in March of 2002. Adv. Dkt. No. 15, Exh. 8. On April 5, 2002, Ocwen filed a Petition to Open/Strike the Default Judgment in the Court of Common Pleas of Allegheny County.

Ocwen argues that it promptly presented its Petition to Open/Strike. In opposition, Ezekoye argues that it was more than five months after the judgment was entered when Ocwen filed the motion to strike or open.

The Court of Appeals for the Third Circuit generally favors a liberal interpretation of the "reasonable time" factor. *Medunic v. Lederer*, 533 F.2d 891, 894 (3d Cir.1976)(a delay of six months is within a reasonable time to move to vacate a default judgment). Based on the information provided in the affidavit of Malaika Carter, Adv. Dkt. No. 37, examined in greater detail in the following paragraphs, the court finds that, under the particular circumstances in this case, filing the Petition to Open/Strike on April 5, 2002, was within a reasonable time.

### Ocwen's Default Resulted From Excusable Neglect

For a court to grant the movant relief from a default judgment pursuant to FED. R. CIV. P. 60(b)(1), the movant must plead and prove its default resulted from excusable neglect. *In re Stone*, 588 F.2d 1316 (10th Cir.1978). The Supreme Court examined the standard of excusable neglect under various federal civil rules, including Rule 60(b)(1). *See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 387, n. 3, 391–92, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)(resolved conflict among circuits by holding broader definition of excusable neglect is applicable under Fed. R. Bankr.P. 9006(b)(1)). The Supreme Court concluded:

> ... at least for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute "neglect."

*Pioneer Investment Services*, 507 U.S. at 394, 113 S.Ct. 1489.

In support of its contentions, Ocwen submitted the Affidavit of Malaika Carter, Assistant General Counsel of Ocwen ("Carter's Affidavit.") Dkt. No. 37. Ocwen asserts, it "did not intentionally delay its response. Its delay was caused, in part, by its innocent mistake, and by Mr. Ezekoye's peculiar choice of mailing address to serve Ocwen." Adv. Dkt. No. 15, at 20. Carter explained:

> 15. The mailroom functions at Ocwen are out-sourced to Ikon. All employees who work i[sic] the mailroom are Ikon employees. There is a central mailroom on the premises physically located at 1665 Palm Beach Lakes Boulevard.

16. If mail is not specifically addressed to a current employee or a department, Ikon's personnel first attempts to discern where mail is to be delivered without opening it. Ikon will hold the correspondence to the light to see if they can identify the contents of the mail so as to indicate the proper destination.... However, if one cannot discern who is the intended recipient by this method, Ikon personnel will open the correspondence.

17. When opening mail that is not addressed to a current employee or a specific department, all mail that contain [sic] any references to plaintiff, defendant, court, attorney, or counsel is delivered to the Law Department. Ikon also forwards all "important" and "legal" documents to Ocwen's Legal Department....

20. I am aware of evidence indicating that K. Downey, an Ikon employee, signed for registered mail sent by Mr. Ezekoye. There is no indication that whatever was included in that mailing was ever received by the Law Department or any other department at Ocwen. The collateral file contained in Ocwen's vault relating to Mr. Ezekoye's Note and Mortgage was personally reviewed by me. There were no extraneous documents located in the collateral file.

Adv. Dkt. No. 37 at 5–6.

In his Opposition to Ocwen Bank's Motion to Open and/or Strike Default Judgment, Ezekoye answered that he "served Ocwen at the address listed on his mortgage papers .... at the same address where mortgage payments were to be sent ..." and "where correspondence between the parties was exchanged." Adv. Dkt. No. 18, at 12. The address given in the Assignment of Mortgage is "Ocwen Federal Bank FSB, 1665 Palm Beach Lakes Blvd. # 105, West Palm Beach, FL 33401." See Adv. Dkt. No. 18, Exh. 1. Ezekoye continues:

A review of the docket at the Prothonotary for Allegheny County reveals that Ocwen has been named as a plaintiff or party in over 187 cases. A more detailed review of the individual dockets reveals Ocwen has been sued or Ocwen has sued others using the following addresses: P.O. Box 24737, West Palm Beach FL 33416 and 1675 Palm Beach Blvd., The Forum West Palm Beach FL 33401, and 1665 Palm Beach Lakes Blvd., Suite 350, West Palm Beach FL.

Adv. Dkt. No. 18, at 12. At Exhibit 10 to Adv. Dkt. No. 18, Ezekoye provides a lengthy list of cases, but no individual dockets illustrating addresses at which service was made.

Despite his recital of addresses used by others, Ezekoye's own inconsistencies in addressing Ocwen are apparent. Ezekoye states that "1665 Palm Beach Lakes Blvd. Suite 350 West Palm Beach FL 33401" is the address Ezekoye always used in his dealings with Ocwen. Adv. Dkt. No. 18 at 12. This statement by Ezekoye is not true. The "Affidavit of Services" signed by Karrin Holmes, Exhibit 2 to Debtor's Opposition to Ocwen Bank's Motion, Adv. Dkt. No. 18, states that the Complaint and the ten-day default notice were served by express mail and priority mail with delivery confirmation, respectively. Attached to the "Affidavit of Services" are copies of postal receipts addressed to the 1665 Palm Beach Lakes Blvd. # 105, West Palm Beach, FL 33401, see Adv. Dkt. No. 18, Exh. 2, which Carter states is the bank vault.[11] Adv. Dkt. No. 37 at ¶ 18. Howev-

---

11. The Affidavit of Services by Karrin Holmes states simply that service was made on Ocwen in "West Palm Beach, FL 33401." Adv. Dkt. No. 18, Exh. 2. The street address and suite

er, the individual docket report for *Ezek-oye v. Ocwen*, GD–01–017451, does not contain the mortgage payment address of "Suite No. 105," upon which Ezekoye made service, but has instead the "Suite No. 350" address, as does the Florida Affidavit of the Judgment and the Florida Judgment Lien Certificate. See Dkt. No. 18, Exhs. 6 & 7.

Carter states in her affidavit:

15. . . . There is a central mailroom on the premises physically located at 1665 Palm Beach Lakes Boulevard. . . .

18. Ocwen's vault is physically located at *1665* Palm Beach Lakes Boulevard, *Suite 105*, West Palm Beach, Florida 33401.

19. At all relevant times, Ocwen's official and registered address is 1675 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33401.

Dkt. No. 37. Ezekoye is correct in asserting that Carter's Affidavit "does not explain why Ocwen did not get notice of the domesticated judgment nor the judgment lien certificate filed with the Florida Department of State." Adv. Dkt. No. 29 at 2, Debtor's Response to Brief to Open and/or Strike. These were sent to 1665 Palm Beach Lakes Blvd., Suite 350, West Palm Beach, FL 33401.[12] There is no indication in Carter's Affidavit as to what is located at Suite #350. Furthermore, Carter makes no mention in her Affidavit of the Florida domesticated judgment nor the judgment lien certificate. However, Carter does state:

12. On March 27, 2002, [a debt collector] called me. [He] indicated that Mr. Ezekoye retained him to collect a judgment against Ocwen in an amount of One Million Dollars. At that time, I was unfamiliar with Mr. Ezekoye and the default judgment. I immediately retained counsel in Florida and Pennsylvania to seek relief from the default judgment . . . .

Adv. Dkt. No. 37. On that same date, Carter was "assigned to coordinate Ocwen's investigation of the circumstances surrounding the default." *Id.* at 3. She further stated:

14. I am not aware of any facts or information that would lead one to believe that Ocwen or its Law Department intentionally failed to respond to the Complaint or Ten–Day Notice. Moreover, I cannot think of any circumstance in which Ocwen has wanted a default judgment [to] be entered against it. Had Ocwen or its Law Department known of the lawsuit, Ocwen would have responded to the Complaint and defended vigorously.

*Id.* Although there is no mention of the Florida domesticated judgment and the judgment lien certificate in Carter's statement, the court finds the omission is immaterial.

The court finds persuasive the last statement in paragraph 14 of Carter's Affidavit that, had Ocwen been properly served, it "would have responded to the [Perjury] Complaint and vigorously defended." Adv. Dkt. No. 37. This is particularly so in this case where Ocwen already had a

number were omitted from Holmes' Affidavit of Service.

12. Ezekoye submitted an Affidavit of Judgment Creditor to the Fifth Judicial Circuit Court of Palm Beach County, Florida, in which he stated "In accordance with the Florida Statute 55.505(1), I, Andrew N. Ezekoye,

hereby swear and certify that the following is the last known post office addresses of/the judgment debtor and the judgment creditor . . . . Ocwen Federal Bank, FSB, 1665 Palm Beach Lakes Blvd., Suite 350, West Palm Beach, FL 33401." Adv. Dkt. No. 18, Exh. 6 at 10.

judgment against Ezekoye regarding the identical property. The court notes that, in the earlier TILA Complaint, as soon as Ocwen learned of the default judgment, Ocwen sought to strike or open it. The court cannot credit any assertion that Ocwen would be less responsive regarding the Perjury Complaint.

The record indicates that Ocwen's mailroom distributes mail accurately when it is addressed to a department or an individual. Neither Ezekoye's Perjury Complaint nor the ten-day notice of intent to take default were addressed to Ocwen's legal department or to a correct address. Because there was an actual suite number, Suite # 105, in the address, the mailroom employees would not have been required under standard mailroom procedures to open the mail in order to determine where it should be directed, and thus would not recognize that it was a legal document that should be directed to the legal department. There is no evidence of record to suggest that it went anywhere other than to where it was addressed, *i.e.*, the bank vault.

The court concludes that Carter's Affidavit, which (1) attests to the processes of Ocwen's mailroom, (2) establishes that the address used by Ezekoye is Ocwen's bank vault and (3) states that Carter personally searched the Ezekoye files and did not discover any of the documents involved in this dispute, supports Ocwen's contention that its lack of response to the Perjury Complaint was due to excusable neglect and was not deliberate.

Ezekoye's service upon Ocwen at the same address in the Perjury Complaint (the instant case) as he had used in the earlier TILA Complaint, which address Ezekoye knew to have resulted in a default judgment, contributed to the inability of Ocwen to address the Perjury Com-

plaint before a default was entered. Furthermore, in the process of taking the second default judgment, Ezekoye did not attempt to schedule a hearing to calculate damages, the stage at which Ocwen was alerted as to the first default judgment. Finally, the court notes that for the entire period from Ezekoye's filing of the Perjury Complaint on August 29, 2001, through Ezekoye's request for entry of default judgment on October 22, 2001, Ezekoye was engaged in the appeal of the TILA decision in the Superior Court of Pennsylvania [13] and thus knew of the attorneys for Ocwen, yet failed to inform them that he had filed the Perjury Complaint and taken a default judgment.

The court concludes from the pleadings and evidence that the requirement of excusable neglect under federal law has been satisfied by Ocwen.

### Prejudice to the Plaintiff and Availability of Lesser Sanctions than Relief from Judgment

In *Feliciano v. Reliant Tooling Company, Ltd.*, 691 F.2d 653 (3d Cir.1982), the Court of Appeals for the Third Circuit addressed the question of prejudice to a plaintiff when a default judgment was opened. In *Feliciano*, a default judgment was entered against an English insurance company. When the district court refused the company's request for relief from the default judgment, the company appealed. The Court of Appeals considered whether vacating the default judgment would prejudice the plaintiff and concluded that the plaintiff had not demonstrated that prejudice "would result from opening the judgment, other than the financial costs associated with enforcing a judgment later vacated." *Feliciano*, 691 F.2d at 656. What would indicate

---

**13.** The appeal was not quashed until November 16, 2001, more than three weeks after

entry of the default judgment in the Perjury Case.

prejudice, the court suggested, was evidence that the judgment creditor's "ability to pursue the claim [had] been hindered since the entry of the default judgment...." or that there had been "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice." *Feliciano*, 691 F.2d at 657. (Citations omitted). *See also Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)("true prejudice" that would "bear substantial weight ... are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party"). None of these circumstances are present here. Thus, there is no prejudice to Ezekoye.

Indeed, the court finds that no lesser action than relief from the state court default judgment is appropriate in these circumstances. As discussed above, the court finds that Ezekoye failed to properly serve Ocwen and thus caused the default. Further, the default judgment of over $1 million entered by the Prothonotary of Allegheny County, on the application of Ezekoye, is both an unconscionable windfall at the expense of Ocwen and in favor of Ezekoye and a judgment directly in conflict with the earlier judgment obtained by Ocwen against Ezekoye in the Mortgage Foreclosure Action..

On October 22, 2001, Ezekoye wrote to the Prothonotary requesting entry of judgment for liquidated damages on Count I of the complaint in the amount of $250,500 plus interest and on Count II of the complaint in the amount of $750,500.00 plus interest. Adv. Dkt. No. 18, Exh. 5 at 1–2.

On October 22, 2001, the Prothonotary acted on Ezekoye's request and entered judgment in the amount of $1,062,706.00 plus costs in favor of Ezekoye and against Ocwen. Adv. Dkt. No. 18, Exh. 5 at 3.

Ocwen asserts that the Prothonotary erred in calculating these damages.

> There is no basis for a calculation of damages beyond the fact that Mr. Ezekoye merely asserts numbers in his complaint. However, even if Mr. Ezekoye had a viable claim, his damages are necessarily unliquidated. Pa. R.C.P. No. 1021(b) specifically prohibits claiming a specific sum where damages are unliquidated: 'Any pleading demanding relief for unliquidated damages shall not claim any specific sum.' Because Mr. Ezekoye's damages are not liquidated Pa. R.C.P. No. 1037(b)(1) *requires* damages to be calculated at a trial.[14]

Adv. Dkt. No. 15 at 10, Debtor's Opposition to Ocwen Bank's Motion to Open and/or Strike Default Judgment.

For the following reasons, the court agrees with Ocwen's contention that the damages demanded in the Perjury Complaint were unliquidated and, thus, their entry by the Prothonotary of Allegheny County on the application of Ezekoye was in violation of Pa. R.C.P. Nos. 1021(b) and 1037(b)(1).

The damage claim in Count I of the Perjury Complaint is as follows:

> Wherefore, Plaintiff sues the Defendant Ocwen for Perjury and demands compensatory damages in the amount of $250,500, and punitive damages in the amount not to be less than triple the Compensatory damages stated hereto in this paragraph plus interest and cost.

---

14. Pa. R.C.P. 1037(b)(1) reads as follows: The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

Adv. Dkt. No. 18, Exh. 1 at ¶ 37. As discussed earlier in this Opinion, there is no civil action for perjury in Pennsylvania and thus there can be no judgment for damages for a sum certain. Further, the words "not to be less than" in calculating punitive damages necessarily makes the punitive damage award unliquidated. Therefore, whatever damage claim may arise under Count I is uncertain and unliquidated.

The damage claim in Count II of the Perjury Complaint is as follows:

Wherefore, Plaintiff sues Defendant Ocwen to Quiet Ocwen's Title on the property and to discharge and terminate all and any Financial Interest and liens Ocwen may have on the Plaintiff's Property with its mailing address as 120 Lynn Ann Drive, New Kensington, Pennsylvania 15068, and its physical location in the borough of Plum in Allegheny County as described herein and to award the Plaintiff the sum of $750,500 in compensatory damages for violating my RESPA Disclosure rights, damage to my credit, and emotional distress, and demand punitive damages in the amount not to be less than triple the Compensatory damages stated hereto in this paragraph plus interest and cost.[15]

Adv. Dkt. No. 18, Exh. 1 at ¶ 50. Ezekoye has, apparently arbitrarily,[16] assigned a value of $750,500 for damages arising from several different alleged torts and contract rights and without indicating how the damages were calculated and allocated among the different actions. Therefore, the damages for each individual tort and contract violation are uncertain and unliquidated. As discussed earlier in this Opinion, the Zeleznik Opinion ruled on Ezekoye's claim for violation of RESPA, holding that the RESPA disclosure was only an estimate,[17] that either the mortgagee or assignee had the right to service the mortgage and that Ezekoye's failure to obtain PHFA financing was not due to any failure of Ocwen but rather to Ezekoye's refusal to attend a

15. The court notes that Count II consists of two separate group of damage demands. The first demand, the action to quiet title, seeks injunctions to extinguish Ocwen's titles and liens to Ezekoye's property. Since Ezekoye never sought to enforce the action to quiet title by following the requirements of Pa. R.C.P. 1066(b), the demand to quiet title is not at issue here. The second demand for a sum certain of $750,500 for compensatory damages for RESPA violations, emotional distress and damage to credit and for unliquidated punitive damages is at issue here.

16. The court recognizes that Ezekoye prepared and submitted the Perjury Complaint without the assistance of counsel and that Ezekoye himself is not an attorney. Ezekoye's lawyers in this proceeding have acknowledged in two pleadings that "the Complaint was poorly drafted," Adv. Dkt. No. 16 at 3, Debtor's Opposition to Motion of Ocwen Federal Bank FSB for Remand to State Court and Objections to Removal, and "the Complaint was drafted by a neophyte," Adv. Dkt. No. 18 at 10, Debtor's Opposition to Ocwen Bank's Motion to Open and/or Strike Default Judgment. The court understands its responsibility to assure that pleadings are given a liberal construction in the interests of justice, FED. R. CIV. P. 8(f), particularly when the pleader is not learned in the law. *Johnson v. Reagan*, 524 F.2d 1123 (9th Cir.1975). The court has frequently in this case overlooked procedural and drafting errors in the Perjury Complaint where the correct form or intentions became clear in subsequent hearings or pleadings. *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). However, the court cannot accept Ezekoye's apparently arbitrary statement of damages where there is no indication of how the damages were calculated, how they are allocated among different causes of action, and especially where there has been no judicial review of the damages.

17. The Zeleznik Opinion ruled that the RESPA disclosure was only an estimate, not a contract, and thus not subject to a claim for breach of contract.

meeting. Zeleznik Opinion, Adv. Dkt. No. 15, Exh. G. Therefore, there can be no recovery of damages for alleged violation of Ezekoye's RESPA rights and the $750,500 total, insofar as it contains damages for violation of RESPA rights, becomes uncertain and unliquidated. As noted earlier, Ezekoye fails to plead the required averments in support of either tort of emotional distress and the court is unaware of a tort action for damage to credit rating. Finally, as noted above, the words "not to be less than" in calculating punitive damages necessarily makes the punitive damage award unliquidated. For all these reasons, the court finds that whatever damage award may arise under Count II of the Perjury Complaint is uncertain and unliquidated.

The court concludes that the damages sought in the Perjury Complaint were unliquidated and, thus, their entry by the Prothonotary of Allegheny County on the application of Ezekoye and without judicial determination of damages was in violation of Pa. R.C.P. Nos. 1021(b) and 1037(b)(1).[18]

### Conclusion

Applying the EMCASCO standards that the Court of Appeals for the Third Circuit requires that a trial court must "consider and balance" in determining whether to grant relief from a default judgment, *EMCASCO*, 834 F.2d at 74, the court finds that Ocwen has demonstrated by credible factual and legal allegations that it has meritorious defenses to Ezekoye's Complaint at GD–01–017451 on which the default judgment was taken. Ocwen's own conduct in failing to defend against Ezekoye's Complaint rose no higher than excusable neglect, and was neither willful nor in bad faith. Ezekoye cannot be prejudiced by relief from the default in that his own conduct in serving papers on an address of Ocwen, which Ezekoye knew or should have known was incorrect, contributed to the default. No lesser sanction than relief from the judgment is proper where, as here, a ministerial error by the Prothonotary of Allegheny County, on the instigation of Ezekoye, resulted in the entry of a judgment for damages without judicial determination of those damages as required by Pa.R.Civ.P. 1021(b) and 1037(b)(1).

Defendant Ocwen will be granted relief from the Default Judgment pursuant to Fed.R.Civ.P. 60(b).

Further, the court finds that the meritorious and sufficient defense of *res judicata* asserted by Ocwen has been fully pleaded and argued before the court and that further proceedings are unnecessary. The court finds that the principal arguments and issues in this adversary proceeding were adjudicated in the Mortgage Foreclosure Action, that successful litigation on the arguments asserted by Ezekoye in his Complaint would undermine and negate the central findings and conclusions of the state court in the Mortgage Foreclosure Action and, therefore, the Complaint in the instant proceeding is dismissed with prejudice on the grounds of *res judicata*.

An appropriate order will be entered.

### JUDGMENT ORDER

**AND NOW**, this 30th **day of April, 2004**, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED** that Defendant's Motion to Strike and/or Open Default Judgment, treated by the court as a

---

18. The court emphasizes that the entry of judgment by the Prothonotary was a ministerial error and not misfeasance. Finding a sum certain demanded in the Perjury Complaint, the Prothonotary in the ordinary course entered judgment for that amount on request of Ezekoye. The error originated in the pleading.

motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b), is **GRANTED**. The default judgment granted in the Court of Common Pleas of Allegheny County at Docket No. GD–01–017451 is **STRICKEN**. The Complaint is dismissed with prejudice as barred by *res judicata*.

The Clerk will close this adversary proceeding.