586 A.2d 455

**Michael I. HINELINE, Appellant,**

**v.**

**STROUDSBURG ELECTRIC SUPPLY COMPANY, INC. and Stephen F. Sullivan and Sidney Friedman, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided Jan. 29, 1991.

Reargument Denied Feb. 28, 1991.

180

John B. Dunn, Stroudsburg, for appellant.

Sandor Yelen, Wilkes–Barre, for Stroudsburg Elec., appellee.

Gerard J. Geiger, Stroudsburg, for Sullivan, appellee.

Before McEWEN, MONTEMURO and JOHNSON, JJ.

MONTEMURO, Judge:

Appellant, Michael I. Hineline, brought this action against appellees, Stroudsburg Electric Supply Company, Inc., Stephen F. Sullivan and Sidney Friedman, alleging invasion of privacy, violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701 *et seq.*, and violations of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2520. The trial court granted appellees' preliminary objections in the nature of a demurrer and dismissed the complaint, concluding that pursuant to Pennsylvania Rule of Civil Procedure 1020(d), appellant was required to join the instant causes of action in his previous action for wrongful termination, and therefore had waived the present causes of action. The issue on appeal is whether the trial court erred in concluding that appellant's causes of action for invasion of privacy and wiretap violations arose out of the same transaction or occurrence as his cause of action for wrongful discharge, thereby requiring compulsory joinder under Pa.R.C.P. 1020(d)(1). We affirm.

■ Initially, we note that in reviewing a grant of a demurrer, we view the demurrer to the complaint as an admission of all well pleaded facts and inferences reasonably deducible therefrom. "In order to sustain a demurrer it must be certain that the law will not permit recovery upon the facts pleaded, all of which are to be taken as true." *Daniel Adams Associates v. Rimbach Pub. Inc.*, 287 Pa.Super. 74, 76, 429 A.2d 726, 727 (1981), *citing Tanenbaum v. Sears, Roebuck & Co.*, 265 Pa.Super. 78, 401 A.2d 809 (1979).

■ Under Pa.R.C.P. 1020(d)(1) and (4),

(d)(1) If a transaction or occurrence gives rise to more than one cause of action against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person.

*         *         *         *         *         *

(4) Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action.

Pa.R.C.P. 1020(d).[1] Rule 1020(d)(1) requires a plaintiff to join in one action all causes of action which arise from the same transaction or occurrence, regardless of the nature of the claim. Failure to join a cause of action as required by Rule 1020(d)(1) results in waiver of that claim. *Jones v. Keystone Insurance Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987) (*appeal denied* 518 Pa. 613, 540 A.2d 535 (1988)).

■ Rule 1020(d) is to "be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding" to which it is applicable. Pa.R.C.P.

---

**1.** Prior to July 1, 1984, Rule 1020 read:

(d)(1) If a transaction or occurrence or a series of transactions or occurrences gives rise to causes of action in assumpsit and trespass against the same person, including causes of action in the alternative, they shall be joined in an action against any such person in separate counts....

Following the Supreme Court's abolishment of the procedural distinctions which had existed between assumpsit and trespass and their creation of the single, unified action known as "civil action" in 1983, the Court amended Rule 1020 to read as the current version. *Jones v. Keystone Ins. Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987).

126. The purpose of Rule 1020(d) is to avoid multiplicity of suits, thereby ensuring the prompt disposition of all rights and liabilities of the parties in a single suit.

The few cases which apply Rule 1020(d) provide little guidance as to how we are to determine whether separate causes of action arise out of the same transaction or occurrence. The trial court relied upon the case of *Jones, supra.* A careful reading of *Jones* reveals that the case involved the application of the earlier version of Rule 1020(d) which only required joinder of causes of action in trespass and assumpsit which grew out of the same transactions or occurrences. In *Jones,* the plaintiff had raised two separate causes of action in assumpsit and therefore did not have to join the two claims in her prior action. 364 Pa.Super. at 326, 528 A.2d at 181. Thus, the *Jones* Court never reached the question of whether the two claims arose out of the same transaction or occurrence. In *Epstein v. State Farm Mutual Insurance Co.,* 312 Pa.Super. 542, 459 A.2d 354 (1983), this Court applied the pre–1983 version of Rule 1020(d) which required joinder of causes of action arising out of the same transaction or occurrence or series of transactions or occurrences. In *Epstein,* the plaintiff filed an action against the insurer of his motor vehicle to recover uninsured motorist benefits for injuries resulting from a motor vehicle accident. Plaintiff brought a second action in tort, seeking general and punitive damages for the insurance company's refusal to pay the uninsured motorist benefits. This Court held that because the two causes of action arose from the same occurrence, that is, the insurance company's refusal to provide the uninsured motorist benefits, the plaintiff was required to assert the two claims in the same action under the old version of Rule 1020(d). The *Epstein* case is of little help to us, as the decision provides no explanation for its conclusion that the two causes of action arose out of the same occurrence.

■ Several cases interpret the phrase "same transaction or occurrence" in the context of other Rules of Civil Procedure which permit joinder of complaints where the cause of

action arises out of the same transaction or occurrence as the original complaint. These cases provide some direction to us here, as there is no reason to believe that different interpretations are to be given to the phrase "same transaction or occurrence," subject to the particular Rule of Civil Procedure which uses the phrase. In *Stokes v. Local Order of Moose Lodge No. 696*, 502 Pa. 460, 466 A.2d 1341 (1983), the supreme court interpreted Pa.R.C.P. 2252(a)(4) which permits joinder of additional defendants in cases where the cause of action against the additional defendant arises out the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based. The Court held that complaints arise out of the same transaction or occurrence where they involve "a common factual background or common factual or legal questions." *Stokes, supra*, 502 Pa. at 467, 466 A.2d at 1345. Where the evidence that would establish one complaint is distinct from the evidence that would establish the other complaint, the complaints do not arise from the same transaction or occurrence. *Id.* Similarly, in *United National Insurance Co. v. M. London, Inc.*, 337 Pa.Super. 526, 487 A.2d 385 (1985), this Court adopted the following definition of "transaction" within the meaning of Pa.R.C.P. 2256(b) (permitting additional defendant to bring counterclaim based on same transaction, occurrence or series thereof giving rise to original cause of action):

A "transaction" within the statutes as to counterclaims is defined as the act of transacting or conducting any business, negotiation, management, or proceeding. The word, as used in counterclaim statutes, is broad and comprehensive, and is construed liberally and according to its natural and ordinary signification. In other words, the term is not a technical one and must be construed according to the context and approved usage. It is broader in meaning than "contract" or "tort," and it may include either or both. *It means any act as affecting legal rights or obligations, and properly embraces an entire occurrence out of which a legal right springs or*

*on which a legal obligation is predicated,* although it has been held that the term is not synonymous with "accident" or "occurrence."

*United National, supra,* 337 Pa.Superior Ct. at 543, 487 A.2d at 393, (quoting 80 C.J.S., Set–Off and Counterclaim, § 36b at 48–50) (emphasis added).

We recognize that Rules 2252(a) and 2256(b) differ from Rule 1020(d) insofar as they permit joinder of complaints where the causes of action arise out of the same transaction or occurrence or *series* of transactions or occurrences, whereas Rule 1020(d) is limited to causes of action which arise out of the same transaction or occurrence. We nevertheless find the analysis in *Stokes* and *United National* to be applicable here, as the discussion in *Stokes* is limited to what constitutes the same transaction or occurrence, and the language quoted from *United National* simply defines the term "transaction."

Thus, we must examine the factual underpinnings of appellant's two complaints and determine whether the causes of action for wrongful discharge, invasion of privacy and wiretap violations arose from the same transaction or occurrence, that is, whether the claims involve a common factual background or common legal questions.

The first complaint alleges the following facts. From October 1, 1977 until December 17, 1986, appellant was an employee of appellee, Stroudsburg Electric Company ("Stroudsburg"). Appellee, Stephen F. Sullivan, was both the president of Stroudsburg and appellant's supervisor. Sometime prior to December 17, 1986, Stroudsburg installed four cameras with audio hookup which were used for visual and aural monitoring of Stroudsburg's employees and customers; the surveillance equipment was used without the knowledge of the employees and customers, and without the approval, acquiescence or authority of appellant. On December 17, 1986, upon discovering that the monitoring system was in full use as both an audio and visual monitor, appellant disconnected the equipment so as to prevent further audio monitoring of Stroudsburg's cus-

tomers and employees, including appellant. When appellee Stephen Sullivan learned of appellant's disconnection of the equipment, he immediately fired appellant.

On the basis of these facts, appellant filed the first complaint on June 18, 1987. The first complaint set forth six counts, including a claim for wrongful discharge from his employment with appellees in which he alleged that the termination of his employment was contrary to public policy as the surveillance system was illegal.[2] The first complaint was dismissed on the basis of preliminary objections, and the dismissal was ultimately affirmed by this Court. *See Hineline v. Stroudsburg Electric Supply Co., Inc. (Hineline I)*, 384 Pa.Super. 537, 559 A.2d 566 (1989), *allocatur denied* 524 Pa. 628, 574 A.2d 70 (1989).[3]

On October 7, 1988, appellant filed the present action for invasion of privacy and violations of the Pennsylvania and federal wiretap laws. The second complaint sets forth the identical or substantially the same factual allegations as the first complaint regarding appellees' installation and operation of audio and video equipment, appellant's disconnection of the system and appellee Sullivan's immediate firing of appellant. The only difference between the first complaint and the instant complaint is the legal theories upon which relief is sought. The trial court therefore concluded that the two complaints arose out of the same transaction or occurrence, and under Rule 1020(d), appellant was required

**2.** The other counts set forth claims for intentional interference with contractual relationship, breach of covenant of good faith and fair dealing, punitive damages, and breach of fiduciary duty by Stroudsburg and Sidney Friedman.

**3.** A first appeal from the first complaint was quashed as interlocutory, as the trial court had permitted appellant to amend his count for breach of contract. *See Hineline v. Stroudsburg Electric Supply Co.*, No. 42 Philadelphia 1988 (memorandum filed September 7, 1988) 383 Pa.Super. 671, 550 A.2d 254 (table). After the appeal was quashed, appellant withdrew his breach of contract count and filed another notice of appeal from the order dismissing his wrongful discharge claim. In this second appeal, this Court held that appellant had failed to state a cause of action in wrongful discharge based on a violation of public policy. *See Hineline I, supra.*

to join his claims for invasion of privacy and wiretap violations in the first action involving wrongful discharge.

We agree with the trial court that appellant's causes of action for wrongful discharge, invasion of privacy and wiretap violations arose out of the same transaction and occurrence, that is, appellees' installation and operation of the surveillance equipment and appellant's disconnection thereof. All of the asserted causes of action share a common factual background and legal issues, as they are based on the premise that appellees acted illegally in using the video cameras with audio capabilities at appellees' place of business.

To make out his prior action in wrongful discharge, appellant would have had to prove the illegality of appellees' conduct under the wiretap statutes, as his wrongful discharge case was based on the theory that the termination was due to appellant's disconnection of the allegedly illegal electronic surveillance system. *See Hineline I, supra,* 384 Pa.Super. at 539, 542 n. 2, 559 A.2d at 568–69 n. 2 ("Specifically, appellant asserts that appellees were violating 18 Pa.C.S.A. § 5703(1) by the 'secret taping of a customer's or an employee's conversation in a retail establishment....' "). Likewise, in establishing the elements of the instant causes of action, appellant would have to establish that appellees' conduct violated the wiretap statutes. Thus, the cases involve common legal questions.

From a factual standpoint, both cases require proof as to the installation of the equipment, the aural monitoring of appellant, appellees' customers and other employees, and appellant's disconnection of the equipment. The most telling factor here is that appellant alleged the identical or nearly identical facts in support of both of his complaints. The same occurrence brought about the causes of action for wrongful discharge, breach of privacy and wiretap violations. Thus, appellant's evidentiary proof would be the same in both cases, with the exception of his proof of damages.

Should these two cases have gotten past the preliminary objection stage, the same pretrial discovery would have taken place in both cases and the same witnesses, including the parties, would be required to appear at two separate trials. Two separate juries would have had to be impanelled to hear virtually the same evidence and resolve many of the same legal questions. This kind of repetition is precisely what Rule 1020(d) was intended to avoid. We note that this is the third appeal to this Court arising out of appellees' operation of the illegal surveillance system.

Given the interrelatedness of the factual and legal issues posed by the two cases, we hold that appellant's causes of action arose out of the same transaction or occurrence and therefore should have been joined in the same complaint. Our conclusion is consistent with the purpose of Rule 1020(d) to prevent the imposition of a heavy burden on defendants and the judicial system to defend and resolve multiple suits arising out of the same occurrence.

Appellant argues that his two complaints are based upon two separate transactions or occurrences: the firing of appellant for his disconnection of the monitoring equipment and the illegal surveillance of appellant. This argument overlooks the fact that appellees' termination of appellant's employment did not occur in a vacuum. But for appellees' use of the illegal equipment, appellant would not have a cause of action for wrongful discharge. We disagree that the phrase "same transaction or occurrence" within the meaning of Rule 1020(d) should be so stringently interpreted as to mean a single fact or instantaneous event, rather than a combination of acts and events giving rise to a right to judicial relief. As the Court in *United National* stated, the term transaction "properly embraces an entire occurrence out of which the legal right springs or on which a legal obligation is predicated." 337 Pa.Super. at 543, 487 A.2d at 393. Thus, we do not agree that the causes of action are based on distinct transactions or occurrences simply because appellees' use of the illegal surveillance

system precipitated the further harm of appellees' termination of appellant's employment.

For all of the foregoing reasons, we affirm the order of the trial court dismissing this case pursuant to Rule 1020(d). In doing so, we make no determination as to the validity of the merits of this case; we recognize the seriousness of appellees' conduct under both the criminal and civil provisions of the wiretap statutes.

Order affirmed.