## Philipp v. U.S. Air Inc.

*Stephen G. Bresset,* for plaintiff.
*David J. Felicio,* for defendants Geisinger Medical Center and T. Duncan Sellers, M.D.
*David E. Heisler,* for defendant Milkanin Detective Agency Inc.
*John J. Aponick Jr.,* for defendant U.S. Air Inc.
*James M. Beck,* for defendant Cardiac Pacemakers Inc.

COTTONE, *J.,* February 23, 1993—Before the court for disposition are preliminary objections brought by the defendants, U.S. Air Inc., Geisinger Medical Center (hereinafter GMC) and T. Duncan Sellers, M.D., and Milkanin Detective Agency Inc. For the reasons that follow, we must sustain their preliminary objections.

Factually, on September 12, 1988, the plaintiff, Margaret Philipp, underwent cardiac surgery at GMC. During that procedure, the plaintiff received an automatic implantable cardiac defibrillator (hereinafter AICD), manufactured by the defendant, Cardiac Pacemakers Inc. (hereinafter CPI). Dr. Sellers was the electrophysiologist for the plaintiff's surgery on that date.

On April 18, 1989, the plaintiff arrived at the Wilkes-Barre/Scranton International Airport to travel upon a U.S. Air flight. Dr. Sellers had previously given a note directing security personnel at the airport to hand frisk the plaintiff and to allow her to bypass airport security devices due to their effect on her AICD. The plaintiff approached a security check point manned by employees of Milkanin, when she experienced shocks or discharges from the AICD. Subsequently, the plaintiff's AICD had to be deactivated and removed.

Based upon these events, on April 30, 1990, the plaintiff commenced a suit, docketed at no. 90 Civ. 2588, against the airport, U.S. Air, Milkanin, CPI, GMC and Dr. Sellers. The plaintiff alleged claims sounding in negligence, strict liability in tort, intentional infliction of emotional distress, and punitive damages. On December 6, 1991, the court granted summary judgment in favor of the airport. On April 27, 1992, the court entered two orders granting summary judgment in favor of the defendants, GMC and Dr. Sellers, as well as the defendant, CPI. On May 11, 1992, the plaintiff appealed the summary judgment orders of April 27, 1992. On August 19, 1992, the Pennsylvania Superior Court quashed the appeals as untimely.

Then, on July 16, 1992, the plaintiff initiated a new suit, docketed at 92 Civ. 3072, based upon the same events which gave rise to the first complaint. This time, the plaintiff set forth breach of warranty claims against the same defendants. It is from the second suit that the preliminary objections have been filed. We shall dispose of the preliminary objections of each defendant *seriatim.*

## *Philipp v. U.S. Air*

Initially, U.S. Air contends that the plaintiff failed to comply with the specific requirements set forth in

Pa.R.Civ.P. 1020(d).[1] U.S. Air asserts that the plaintiff should have raised the instant breach of warranty claims in her first complaint filed at 90 Civ. 2588. U.S. Air further maintains that her failure to do so constitutes a waiver of those claims. On the contrary, the plaintiff argues that her breach of warranty claims involve legal questions unrelated to the negligence claim asserted in the first action. As such, the plaintiff argues that Rule 1020(d) does not preclude her from pursuing the action at bar. We find the plaintiff's argument to be totally meritless.

Indeed, a plaintiff is required to join in one suit, all causes of action which arise from the same transaction or occurrence. Pa.R.Civ.P. 1020(d)(1). This rule applies whether the plaintiff's claims are contractual in nature, in the nature of tort, or a combination thereof. *Jones v. Keystone Insurance Co.,* 364 Pa. Super. 318, 528 A.2d 177 (1987), *allocatur denied,* 518 Pa. 613 (1988). See also *D'Allesandro v. Wassel,* 526 Pa. 534, 587 A.2d 724 (1991). Furthermore, failure to join a cause of action as required by this rule shall be deemed a waiver of that claim as against all parties to the action. Pa.R.Civ.P. 1020(d)(4). The rule serves to further the important objectives of finality and judicial economy.

---

1. Rule 1020(d) provides, in pertinent part, as follows:

"(d)(1) If a transaction or occurrence gives rise to more than one cause of action against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person.

"Note: Subdivision (d)(1) requires the joinder of related causes of action. The joinder of unrelated causes of action is permissive. See subdivision (a).

"(4) Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action."

*Hineline v. Stroudsburg Electric Co. Inc.,* 402 Pa. Super. 178, 586 A.2d 455, *allocatur denied,* 598 A.2d 284 (1991).

We are further guided by the *Hineline* case, in which the court addressed the issue at bar, holding that where causes of action arise out of the same transaction or occurrence, i.e., where they share a common factual background or common legal issues, joinder of those claims in the same complaint is compulsory. *Id.,* 586 A.2d at 457-459. In *Hineline,* the employer-defendant installed four cameras with audio hookup to monitor employees and customers without their knowledge or authority. Upon discovering the monitoring system, the plaintiff disconnected the equipment, and consequently, the defendant fired him.

Based upon these facts, the plaintiff filed a complaint which included a claim for wrongful discharge. That complaint was subsequently dismissed on the basis of preliminary objections. The plaintiff then filed a second complaint against the same defendant alleging claims for invasion of privacy and wiretap violations. The plaintiff alleged nearly identical facts in support of both complaints. The court held that, due to the interrelatedness of the factual and legal issues posed by the two cases, the causes of action of the second suit should have been joined in the first complaint. *Id.*

Applying the above principles and reasoning to the instant case certainly must yield the same result. In the present complaint, the plaintiff sets forth identical or substantially the same factual allegations as the complaint filed at 90 Civ. 2588. The plaintiff bases both complaints on the implantation of the AICD and the events of April 18, 1989, at the airport. The only difference here is the theory of recovery, namely, certain

violations of the warranty provisions under the Sales Article of the Uniform Commercial Code (hereinafter UCC). Notedly, in the first complaint, the plaintiff included products liability claims, which certainly raise similar legal questions as the breach of warranty claims. See *MacDougall v. Ford Motor Co.,* 214 Pa. Super. 384, 257 A.2d 676 (1969). Thus, based upon the identical factual background and common legal questions of the two cases, we conclude that the causes of action arose out of the same transaction or occurrence. Hence, the plaintiff's failure to join the breach of warranty claims in the first suit constitutes a waiver of these claims.

In addition, U.S. Air contends that the complaint fails to set forth a cause of action upon which relief can be granted. We note that in making this determination, we must accept as true all of the well-pleaded material facts contained in the complaint, as well as all of the reasonable inferences deductible therefrom. *Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976).

Specifically, U.S. Air argues that upon the facts averred, the warranty provisions under the UCC do not apply here.[2] The plaintiff on the other hand, asserts that, upon her purchasing of a ticket from U.S. Air, U.S. Air impliedly warranted to provide the plaintiff with safe transportation to her destination. The plaintiff alleges that her AICD malfunctioned as a result of getting too close to the security detection device at the airport. Consequently, since she was not transported safely, the plaintiff contends that U.S. Air breached the implied

---

2. Article 2 of the UCC, as it has been adopted in Pennsylvania, is codified in 13 Pa.C.S. §2101, et seq.

and express warranty provisions under the UCC. We find this contention to be equally, if not more, meritless as the plaintiff's first argument.

Indeed, the provisions of Article 2 of the UCC apply to cases involving the sale of goods or transactions in goods. 13 Pa.C.S. §2102. The UCC defines goods as "all things which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." 13 Pa.C.S. §2105(a). Thus, in order to constitute a transaction in goods, the subject matter of the transaction—the putative good—must be tangible and movable. *Whitmer v. Bell Telephone Co.,* 261 Pa. Super. 282, 522 A.2d 584 (1987). Additionally, when the transaction involves predominantly the rendition of services, the fact that tangible moving goods may be involved in the performance of services does not bring the contract under the UCC. *Id.* at 288, 522 A.2d at 587. See also *Cober v. Corle,* 416 Pa. Super. 191, 610 A.2d 1036 (1992).

Moreover, the issue here was addressed in *Dembinski v. Blue Ridge Real Estate,* 9 D.&C.3d 586 (1978), where the court held that the UCC warranty provisions did not extend to the rendition of services, specifically, the purchase of a ski-lift ticket where the plaintiff sustained injuries as a result of a chair-lift accident. *Id.* at 589. The court reasoned that any implied warranty of safety in the operation of the lift is nothing more than an implied promise not to operate the lift in a negligent manner. *Id.* Thus, the plaintiff's cause of action sounded in trespass, not breach of warranty under the UCC.

Similarly, in our case, the plaintiff alleges that by her purchase of a ticket, U.S. Air warranted to transport her safely to her destination. Applying the above case

law and reasoning, we fail to see how the instant facts would trigger the application of the warranty provisions of the UCC. The plaintiff did not purchase any tangible, movable goods. There is nothing to suggest that the equipment used by U.S. Air in providing transportation was in any way defective. The acts here simply constituted the providing of services rather than goods. As such, we find that the plaintiff cannot recover under the provisions of the UCC.[3]

### Philipp v. GMC and Dr. Sellers

As with U.S. Air, the defendants, GMC and Dr. Sellers, base their first objection to the plaintiff's complaint on Pa.R.Civ.P. 1020(d). Based upon our discussion of this issue in U.S. Air's preliminary objections, we must similarly dismiss the plaintiff's breach of warranty claims against GMC and Dr. Sellers.

Next, GMC and Dr. Sellers also demur to the complaint, contending that upon the facts averred, the UCC warranty provisions do not apply to them. Specifically, they posit that the surgical insertion of the AICD at the hospital does not constitute a transaction covered by the UCC. On the contrary, the plaintiff maintains that the defendants sold and implanted a defective AICD which caused her injuries. As such, the plaintiff contends that the UCC does apply. Once again, we must disagree.

In addressing this issue, we rely on *Podrat v. Codman-Shurtleff Inc.*, 384 Pa. Super. 404, 558 A.2d 895

---

3. We note that, since we are able to dispose of the preliminary objections on the basis of demurrer and Rule 1020(d), we need not reach the question raised by U.S. Air in the motion to strike for the plaintiff's failure to attach the ticket to her complaint in violation of Pa.R.Civ.P. 1019(h).

(1989), where the court held that a hospital could not be held strictly liable to a patient for injury which resulted when a medical instrument broke during surgery. In reaching its holding, the court relied upon the rationale of several cases from other jurisdictions, which we also find persuasive.

In *Silverhart v. Mount Zion Hospital,* 20 Cal.App.3d 11022, 98 Cal. Rptr. 187 (1971), the court refused to hold a hospital strictly liable where a surgical needle supplied by the hospital broke during an operation and became permanently lodged in the patient's body. The *Silverhart* court reasoned that a hospital is a provider of professional medical services, and that it is not ordinarily engaged in the business of selling any of the products or equipment it uses in providing services. *Id.* at 1028, 98 Cal. Rptr. at 191. The *Silverhart* court was persuaded by the rationale that the essence of a transaction between a retail seller and a consumer relates to the article sold, whereas the essence of the relationship between a physician and a patient concerns the doctor's professional services and skill. *Id.* at 1026, 98 Cal. Rptr. at 190, citing *Magrine v. Krasnica,* 94 N.J. Super. 228, 227 A.2d 539 (1967), *aff'd.* 100 N.J. Super. 223 (1968) and 53 N.J. 259 (1969).

Moreover, in *Hector v. Cedars-Sinai Medical Center,* 180 Cal.App.3d 493, 225 Cal. Rptr. 595 (1986), the court found that the hospital could not be held subject to strict liability or breach of warranty claims for injuries caused by defects in a pacemaker, since the supplying of the pacemaker is integrally related to the hospital's primary function of providing medical services. The *Hector* court noted that the patient does not enter the hospital merely to purchase a pacemaker, but to obtain a course of treatment which includes implantation of a pacemaker. *Id.*

Finally, we cite with approval the case of *Cutler v. General Electric Co.*, 4 UCC RS 300 (N.Y. Sup. Ct. 1967), where the court specifically held that the surgical insertion of a pacemaker by a doctor into a patient in a hospital was not a transaction covered by the sales provisions of the UCC, so as to give rise to a cause of action for breach of warranty against either the doctor or the hospital. *Id.* at 301. In *Cutler,* the court reasoned that, even though the plaintiff paid the hospital for the cost of the pacemaker, the incidental furnishing of the device in the treatment and care of the patient did not create the relationship of seller and purchaser of the item. *Id.*

Applying the above case law, we conclude that the plaintiff cannot maintain a cause of action for breach of warranty against either GMC or Dr. Sellers. The hospital and doctor are providers of professional medical services; they are not ordinarily engaged in the business of the sale of surgical appliances. Supplying the AICD was only a secondary adjunct to their primary function of providing professional medical services. Consequently, we find that the warranty provisions of the UCC do not apply here.

## *Philipp v. Milkanin*

Finally, we turn our attention to the preliminary objections of the defendant, Milkanin. However, our disposition of these objections does not require a detailed discussion since the plaintiff, at oral argument, did not object to the dismissal of the cause of action against Milkanin. Therefore, we sustain Milkanin's preliminary objections. Accordingly, an appropriate order follows.

## ORDER

Now, February 23, 1993, for the reasons enunciated in the foregoing opinion, it is hereby ordered that the preliminary objections of U.S. Air, GMC and Dr. Sellers, and Milkanin are sustained. It is further ordered that Count I, Count III, and Count IV are hereby dismissed.