J-S27033-25

2025 PA Super 229

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
WILLIAM FRANKLIN : No. 807 EDA 2024

Appeal from the PCRA Order Entered February 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0605611-1980

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED OCTOBER 7, 2025**

Appellant, the Commonwealth, appeals from the order entered pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* ("PCRA") in the Philadelphia Court of Common Pleas on February 28, 2024, which granted Defendant/Appellee, William Franklin, a new trial. After a careful review, we vacate and remand for further proceedings.

Appellee was tried and convicted in 1980 for first-degree murder and related offenses. Appellee filed a direct appeal, and this Court affirmed his judgment of sentence in 1984. ***Commonwealth v. Franklin***, 488 A.2d 1163 (Pa. Super. 1984). Appellee filed his first PCRA petition on June 24, 1986, which was denied. He appealed, and this Court affirmed the denial of his petition on August 27, 1990. ***Commonwealth v. Franklin***, 580 A.2d 25 (Pa.

---

[*] Former Justice specially assigned to the Superior Court.

J-S27033-25

Super. 1990). This Court summarized the relevant facts and procedural history

as follows:

> William Franklin[] was arrested because of an incident involving the murder of Joseph Hollis and the attempted murder of John Pickens. The facts adduced at trial, which were set forth by the lower court in an opinion filed May 24, 1983, may be summarized as follows. The relevant crimes were committed during a meeting on October 22, 1976 which occurred between two rival syndicates engaged in illegal narcotics operations, the "North Philadelphia" and "West Philadelphia" groups. The purpose of the meeting allegedly was to reconcile differences between the two syndicates which had arisen two days earlier when Hollis insulted Alfred Clark, the leader of the North Philadelphia organization, by questioning his credentials as a "real gangster" and slapping him in the face with a gun.

> The meeting on October 22, 1976 was attended by approximately ten people. During the meeting, [William Franklin] and Major Tillery, a member of the North Philadelphia syndicate, drew weapons from underneath a pool table and shot Hollis and Pickens; Hollis died as a result of the shooting. Emmanuel Claitt, also a member of the North Philadelphia group, testified that he had no prior knowledge of the shooting and that he was standing by the door during the meeting to prevent anyone from entering or leaving. Based on information supplied by Claitt, [William Franklin] was arrested four years later. Claitt's evidence was given in return for leniency from the Commonwealth relating to other open cases [against Claitt].

> Following a trial which began on December 1, 1980, a jury found [William Franklin] guilty of first degree murder, possession of instruments of crime generally, criminal conspiracy, and aggravated assault. [William Franklin]'s post-verdict motions were filed and argued by trial counsel. Subsequently, [William Franklin] raised allegations of ineffectiveness and new counsel assumed representation. [William Franklin] was given additional time to file and brief post-trial motions *nunc pro tunc*. However, following a second hearing, all of [William Franklin]'s post-verdict motions were denied. On July 7, 1982, [William Franklin] was sentenced to serve life imprisonment for the murder conviction, concurrent terms of five (5) to ten (10) years for criminal conspiracy and two and one-half (2 1/2) to five (5) years on the weapons charge, as

well as a consecutive term of five (5) to ten (10) years for aggravated assault.

*Id.* at 27-28. As stated above, Appellee went on to file a direct appeal and a first PCRA petition.

The instant appeal arises out of Appellee's second PCRA petition filed July 18, 2016, in which he claimed that eyewitness Claitt provided false testimony against him at his 1980 trial. Appellee's petition raised claims pursuant to 42 Pa.C.S.A. § 9543(a)(2)(i) and (vi), stating that his conviction was based on a violation of the Constitution by running afoul of *Brady v. Maryland*, 373 U.S. 83, (1963), and that he had after-discovered exculpatory evidence unavailable to him at the time of trial. PCRA Petition, 7/18/16, at 3-4. Appellee conceded that his petition was facially untimely. *Id.* at 4.

Initially, the PCRA court issued a Rule 907 notice of its intent to dismiss the petition as untimely and ultimately dismissed the petition on September 12, 2017. Appellee appealed the denial of his second PCRA petition to this Court. Although facially untimely, Appellee had presented a newly-discovered fact and alleged governmental interference. On appeal we explained:

> The pertinent newly-discovered fact was the recent declaration of Emanuel Claitt, the sole witness against [William Franklin], "that his testimony was entirely false," and that "it was manufactured by the prosecution with the assistance of police detectives and secured by threats, coercion and favors." PCRA Petition, 7/18/16, at ¶8. In support of the governmental interference exception, [William Franklin] pled that he was prevented from demonstrating his innocence at trial "because the Commonwealth concealed its actions presenting false evidence and withheld exculpatory evidence in violation of *Brady v. Maryland*[, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),] and *Napue v. Illinois*[, 360

U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959),] and due process principles[.]" *Id.* at ¶9.

[William Franklin] averred further that Claitt made a sworn declaration on behalf of [William Franklin]'s co-defendant Major Tillery on May 4, 2016, and a supplemental sworn declaration on behalf of [William Franklin] on June 3, 2016, recanting his trial testimony implicating [William Franklin] in the murder. These facts became known to him within sixty days of the filing of the petition when Tillery's attorney forwarded the declaration to him. He pled further that Claitt's recantation was unknown to him and could not have been ascertained earlier with the exercise of reasonable diligence. [William Franklin] attached to his petition the declaration by Claitt dated June 3, 2016. [William Franklin] also filed a supplemental PCRA petition in which he provided witness certifications for Helen Ellis and Denise Certain, as well as homicide unit logs and correspondence, that he alleged corroborated Claitt's claims that the Commonwealth gave him favorable treatment and sexual favors in return for his perjured testimony.

*Commonwealth v. Franklin*, 201 A.3d 854, 2018 WL 6011209 at *3-4 (Pa. Super. 2018). This Court found that Appellee had raised genuine issues of material fact regarding the timeliness of his second PCRA petition and the applicable exceptions. We vacated the PCRA court's order dismissing the instant petition and remanded for an evidentiary hearing to determine if Appellee's petition proved the timeliness exceptions he pleaded. *Id.* at *13.

The PCRA court held evidentiary hearings on the timeliness exceptions. The first hearing was held on July 22, 2019. Appellee was represented by James Lloyd, Esquire. Testimony was given by three individuals: Appellee, Robert Mickens, and Rachel Wolkenstein, Esquire. Robert Mickens was a member of the North Philadelphia group and was associated with the poolroom shooting that led to Appellee's and Major Tillery's murder convictions. While

he did not testify at Appellee's 1980 trial, he did testify as a witness for the Commonwealth at co-defendant Tillery's 1985 trial. He testified at Tillery's trial that he was the lookout who stood outside the poolroom during the gang meeting and that he observed Appellee running after the surviving victim, Pickens.

Attorney Wolkenstein is a New York attorney who, since February 2015, has assisted Appellee's co-defendant, Tillery, in his efforts to overturn his conviction. As part of her investigation into Tillery's case, she met with Mickens regarding his role in Tillery's trial. Mickens recanted his trial testimony to her, asserting that in exchange for sexual favors, he was coerced into falsely testifying at Tillery's trial that he saw Appellee and Tillery commit the shooting at the poolhall. She typed a statement memorializing Mickens' recantation and asked him to sign it. She used this statement as evidence in a PCRA petition she filed for Tillery in 2016.

Mickens led Attorney Wolkenstein to Claitt, the eyewitness who testified in Appellee's trial, who also asserted to her that he was coerced into providing false testimony at Appellee's trial in exchange for sexual favors. In a manner similar to how she documented Mickens' recantation, Attorney Wolkenstein prepared affidavits which Claitt signed. She also met with Claitt in her car and created a recorded video of him reading his statement recanting. She is the attorney referenced above who made Appellee aware of Claitt's recantation in 2016 by mailing to Appellee Claitt's declaration recanting the testimony he

gave in Appellee's 1980 trial. She reached out to Appellee with these statements because, although he was not her client, she knew the information would be beneficial to him.

Notably, while Mickens and Attorney Wolkenstein testified at Appellee's PCRA evidentiary hearings, Claitt did not. Instead of Claitt testifying at Appellee's PCRA hearing that he lied at Appellee's trial, Mickens testified at the PCRA hearing that he lied in *Tillery's trial* in an attempt to corroborate Claitt's recantation to Attorney Wolkenstein. Further evidentiary hearings were scheduled for October 7, 2019, and December 18, 2019. Claitt failed to appear on these dates. On December 18, 2019, the PCRA hearings resumed, and Claitt failed to appear for a third time. N.T., 10/18/23, at 5. At this hearing, counsel for Appellee sought to introduce the video of Claitt's recantation—the above-mentioned video recorded by Attorney Wolkenstein in her car in 2016. The Commonwealth objected to the admission of the video as hearsay while Appellee's counsel argued that the video constituted a statement against penal interest, an exception to the hearsay rule. The parties were given time to brief the issue of admissibility of the video. During this briefing period, on September 13, 2020, Claitt passed away. He never testified at any evidentiary hearing for Appellee despite having three opportunities to do so. Nonetheless, the PCRA court admitted and considered as evidence Attorney Wolkenstein's 2016 video of Claitt reading the statement recanting his 1980 testimony.

Evidentiary hearings resumed and were held on June 15, 2023, October 18, 2023, and December 5, 2023, for Appellee to establish the newly-discovered fact and governmental interference exceptions to the PCRA time-bar for his instant petition. A summary of the relevant testimony from each witness at each hearing is as follows: Attorney Wolkenstein testified that when she met with Claitt during her investigation for Tillery, he gave her a statement indicating that he was not present for the poolhall shooting. N.T., 7/22/19, at 8, 10. Attorney Wolkenstein stated that she met with Claitt in April or May of 2016 and again in June 2016.[1] *Id.* at 9, 14; 11. Both times Claitt gave her information about Appellee's case. *Id.* at 11. Following each time they met, she typed a statement summarizing what he had told her and asked him to sign those statements. She mailed those statements to Appellee on June 15, 2016. *Id.* at 12. In August 2016, she and Claitt met in her car in a parking lot in Philadelphia. *Id.* at 31. She prepared a statement for him to read based on their prior conversations, which he read as she video recorded him.

Attorney Wolkenstein also submitted an affidavit of her own to the PCRA court. Tr. Ct. Op. Ex. D. In her affidavit, she stated that Claitt told her how the detectives allowed him to meet with women for sexual encounters under police custody in the police investigation rooms and in hotels. He claimed that on

---

[1] The testimony suggests the dates of these meetings were April 3 or May 3 and May 4, and June 3 or June 4, and August 3 or August 30. N.T., 7/22/19, at 9, 14; 11, 18; 13, 18.

various occasions he met with his wife, Barbara Claitt, a girlfriend, Helen Ellis, and another girlfriend, Denise Certain. Wolkenstein Declaration, 3/3/20, at 1. Attorney Wolkenstein stated that she was able to locate Helen Ellis at her home who confirmed that she did have sex with Claitt in the homicide interview rooms and was brought there by detectives for that purpose. *Id.* at 2. Despite being subpoenaed, Hellen Ellis never appeared at an evidentiary hearing to testify to these facts on behalf of Appellee. N.T., 7/22/19, at 67-68. Attorney Wolkenstein further stated that she was able to obtain sign-in logs from the police station which indicated that in 1983, Claitt and Denise Certain signed in on the same day around the same times, corroborating Claitt's story that the detectives allowed them to meet up. Tr. Ct. Op. Ex. B.; Ex. D at 4.[2]

Appellee testified that he filed a PCRA petition in July 2016, within a month of receiving Claitt's declarations from Attorney Wolkenstein in the mail. N.T., 7/22/19, at 38-40. The last time Appellee had spoken to Claitt was in the late 1980s, and Appellee did not know Claitt recanted until he received the documents in the mail from Attorney Wolkenstein. *Id.* at 41-42. Appellee testified that he last saw Tillery in 2003. *Id.* at 44.

_____

[2] It is noteworthy that Appellee's trial occurred in 1980, and thus, even if the sign-in sheet can be considered evidence of a sexual rendezvous, it cannot support the claim that Claitt was induced to testify falsely in Appellee's trial three years earlier.

Mickens testified at the evidentiary hearing that he had testified in the Tillery homicide trial. *Id.* at 52. He was shown a statement that Attorney Wolkenstein had typed based on their conversation when he had met with her in April of 2016. *Id.* at 56. He asserted that although he testified at trial that he was the lookout for the poolhall shooting, he lied and was not outside the poolhall and he did not hear[3] or see a murder. *Id.* at 55.

Mickens further asserted that in the 1980s, he was taken from the detention center and asked by Philadelphia detectives to sign a statement implicating Appellee in exchange for intimate time with several different women. *Id.* at 18. He estimated that he was allowed approximately eight sexual encounters with three different women in order to fabricate testimony at Tillery's trial. *Id.* at 36. Mickens also stated that although he testified at Tillery's trial that he did not have a sentencing agreement with the Commonwealth in exchange for his testimony, he was in fact given a guaranteed sentence in regard to rape and robbery charges against him. *Id.* at 38-39. Mickens admitted that when he met with Attorney Wolkenstein in

_____

[3] Contrarily, at the following evidentiary hearing, Mickens did state that he saw someone run past him with a gun and heard gunshots on the night of the poolhall shooting, but maintained that he did not see Appellee and Tillery. N.T., 10/18/23, at 45-46. The man he claims he saw chasing the surviving victim, Pickens, was allegedly Frank Junius, but because Mickens had children with a cousin of Frank Junius, he did not want to implicate him. *Id.* at 81. It is relevant that at the time of this evidentiary hearing, Frank Junius was deceased. *Id*.

2016 and she typed up his statement, there was false information included, but he signed it anyway. *Id.* at 50, 55-56, 82-83.

At the conclusion of all the evidentiary hearings, the PCRA court found that Appellee pleaded and proved the timeliness exceptions in 42 Pa.C.S.A. § 9545(b)(i) and (ii). The PCRA court then vacated Appellee's convictions and granted a new trial. The court reasoned that Claitt was the only eyewitness against Appellee in his 1980 trial, and the court found credible Attorney Wolkenstein's testimony that Claitt admitted to lying for sexual favors and that Helen Ellis confirmed Claitt's story. Tr. Ct. Op. at 7. The PCRA court relied on Claitt's video-recorded recantation and found it reliable. *Id.* at 9. The court explained that the same detectives named by Claitt and Mickens as orchestrating the "Sex for Lies" scandal[4] in Appellee's and Tillery's cases, respectively, were implicated in other Pennsylvania cases for the same conduct. Tr. Ct. Op. at 10-11 (citing ***Commonwealth v. Lester***, 572 A.2d 694, 695 (Pa. Super. 1990), ***Stokes v. City of Philadelphia***, No. 22-0338, 2023 WL 362006, at *2-3 (E.D. Pa. Jan. 23, 2023)).

---

[4] A *Philadelphia Inquirer* article published in 2021 revealed an investigation into claims made by several inmates that they were coerced by certain Philadelphia detectives into providing false testimony in exchange for sexual rendezvous. The article termed these events the "Sex for Lies" scandal. None of the named detectives were ever charged, and none are surviving today. Samantha Melamed, *Sex for Lies*, PHILADELPHIA INQUIRER, (July 20, 2021), https://www.inquirer.com/news/a/philadelphia-homicide-detectives-bribes-exonerations-murder-20210720.html.

The Commonwealth filed a notice of appeal on March 6, 2024. On May 21, 2024, the Commonwealth filed its concise statement pursuant to Pa.R.A.P. 1925(b). This appeal follows.

The Commonwealth raises one issue for our review:

Did the PCRA court err in granting defendant a new trial based on alleged after-discovered evidence of an out-of-court statement prepared for a recanting witness by the co-defendant's defense attorney, where the statement did not meet the statement against interest exception to the rule against hearsay because (1) it did not expose the witness to criminal or civil liability, and (2) the circumstances of the witness's recantation were neither trustworthy nor reliable?

Appellee's Br. at 4.

The following standard governs our review of this appeal:

When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Boyd*, 2007 PA Super 125, 923 A.2d 513, 515 (Pa. Super. 2007), appeal denied, 593 Pa. 754, 932 A.2d 74 (2007). Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. *Commonwealth v. Wilson*, 2003 PA Super 191, 824 A.2d 331, 333 (Pa. Super. 2003), appeal denied, 576 Pa. 712, 839 A.2d 352 (2003).

*Commonwealth v. Rachak*, 62 A.3d 389, 391 (Pa. Super. 2012). Furthermore, this Court is bound by the PCRA court's credibility determinations when the record supports them. *Commonwealth v. Johnson*, 51 A.3d 237, 242-43 (Pa. Super. 2012) (citation omitted).

We first consider whether the PCRA court correctly concluded that Appellee's PCRA petition was timely filed. The timeliness of a post-conviction

- 11 -

petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Here, Appellee's petition was facially untimely, filed some thirty years after his judgment of sentence became final. We must determine if the PCRA court properly found that Appellee established the statutory exceptions to the timeliness provisions in the PCRA. To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provide in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). For claims arising prior to the 2017 amendment to the PCRA, a PCRA petition invoking one of these statutory exceptions must be filed within sixty days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Here, the newly-discovered fact alleged by Appellee in his petition was that eyewitness Claitt provided false testimony against him at his 1980 trial. The PCRA court credited Appellee's testimony at the evidentiary hearing that he did not know of this alleged fact until he received the documents in the mail from Attorney Wolkenstein, and that he had not spoken to Claitt since

the late 1980s, at which time Claitt had not recanted. The PCRA court credited Attorney Wolkenstein's testimony that she contacted Appellee regarding Claitt's recantation for the first time on June 15, 2016 by mail. Accordingly, Appellee had sixty days from June 15, 2016 to file a petition presenting this claim. 42 Pa.C.S.A. § 9545(b)(2). Appellee filed the PCRA petition July 18, 2016, within approximately a month of receiving Claitt's declarations from Attorney Wolkenstein in the mail. Accordingly, the PCRA court did not err in finding that Appellee's petition was timely filed.

However, the PCRA court committed a crucial legal error when it summarily granted Appellee a new trial upon deciding Appellee's claim was timely, without considering the substantive claims raised in Appellee's petition. The PCRA court appears to have conflated the newly-discovered fact exception to the PCRA time bar with a substantive after-discovered evidence claim. **See** 42 Pa.C.S.A. § 9543(a)(2)(vi). However, these are distinct analyses; our Supreme Court has repeatedly stated that "the newly-discovered facts exception to the time limitations of the PCRA, as set forth in [Section] 9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S. § 9543(a)(2)." **Commonwealth v. Burton**, 158 A.3d 618, 629 (Pa. 2017). Satisfaction of the newly-discovered fact exception is merely a prerequisite to a successful substantive PCRA claim, not a basis for relief in and of itself. **See Commonwealth v. Diggs**, 220 A.3d 1112, 1117 (Pa. Super. 2019) (explaining that we must first discern whether we have

- 13 -

jurisdiction before proceeding to an analysis of the merits of an after-discovered evidence claim). Thus, the only thing established at the evidentiary hearings was that the PCRA court does have jurisdiction to address the claims in Appellee's petition. Just because the court has jurisdiction does not mean Appellee is automatically entitled to a new trial, and the court erred in finding as such.

Accordingly, we must remand this matter for the PCRA court to determine if the substantive claims raised in Appellee's petition merit a new trial. As stated earlier, Appellee's petition raised two claims cognizable for relief under the PCRA: first, he claimed that his conviction was based on a ***Brady*** violation,[5] and second, he claimed to have after-discovered exculpatory evidence.[6] PCRA Petition, 7/18/16, at 18, 19. Neither the PCRA court's 1925(a)

_____

[5] To establish a ***Brady*** violation, a PCRA petitioner must demonstrate that: "(1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced." ***Commonwealth v. Treiber***, 121 A.3d 435, 460-61 (Pa. 2015).

[6] To determine whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial, he must demonstrate that the new evidence: "(1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." ***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citations omitted). The proposed new evidence must be both "producible and admissible." ***Id***.

opinion, nor the parties' briefs, engaged in a meaningful discussion of these claims.

The remaining issue for this Court to determine on appeal is whether Claitt's recantation statement prepared by Attorney Wolkenstein and the video recorded by Attorney Wolkenstein of Claitt reading the statement are admissible as evidence to establish Appellee's **Brady** claim and after-discovered evidence claim.

This Court reviews the admission of evidence for an abuse of discretion. **Commonwealth v. Hernandez**, 230 A.3d 480, 489 (Pa. Super. 2020) (citation omitted). An abuse of discretion is "not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Antidormi**, 84 A.3d 736, 749 (Pa. Super. 2014) (quoting **Commonwealth v. Weakley**, 972 A.2d 1182, 1188-89 (Pa. Super. 2009)).

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). There is no doubt that Claitt's recantation in his signed statement and video recording is hearsay as it is being offered as proof that he did, in fact, lie at Appellee's 1980 trial. "Hearsay statements are generally inadmissible unless they fall under an enumerated exception." **Commonwealth v. Busanet**, 54 A.3d 35, 68 (Pa. 2012); Pa.R.E. 802.

Appellee argues, and the PCRA court ruled, that Claitt's recantation is admissible under the hearsay exception for a statement against interest, which reads as follows:

 (b) Hearsay Exceptions. The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \*

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Pa.R.E. 804(b)(3).[7] Thus, this hearsay exception requires (1) that the declarant is unavailable, (2) that the statement be against interest, and (3) that there be corroborating circumstances clearly indicative of its trustworthiness. In the instant case, although Claitt had three opportunities to appear at Appellee's evidentiary hearings and testify, he is now unavailable to testify because he is deceased.[8] Therefore, the first prong is met.

---

[7] This rule is identical to F.R.E. 804(b)(3). **See** Pa.R.E. 804(b)(3) cmt.

[8] We note that while the PCRA court blames his failure to appear, in part, on the COVID-19 pandemic, he was scheduled to appear on three separate dates in 2019, prior to the outbreak of the pandemic in the United States and prior to the closing of the courts. Tr. Ct. Op. at 15-16.

The second prong is whether the statement was against Claitt's interest such that it exposed him to civil or criminal liability. The Commonwealth argues that Claitt knew he could not have been subject to any liability or penalty for admitting in 2016 that he committed perjury in 1980 because the statute of limitations on perjury had long expired. *See* Appellant's Br. at 23; 42 Pa.C.S.A. § 5552(b)(1) (prosecution for perjury must be commenced within five years after it is committed). However, the PCRA court pointed out that in Pennsylvania, there is no limitations period for the prosecution of murder *or felonies perpetrated in connection with a murder*. Tr. Ct. Op. at 23; 42 Pa.C.S.A. § 5551. The PCRA court noted that the phrase "in connection with" does not suggest a limiting term. Tr. Ct. Op. at 24. (citing ***Commonwealth v. Dietrich***, 260 A.3d 101, *3 (Pa. Super. 2021)[9] (unpublished memorandum). The court explained that, because Claitt perjured himself at Appellee's murder trial, it qualifies as a felony perpetrated "in connection with" a murder of the first degree. Tr. Ct. Op. at 25. Accordingly, the PCRA court decided that there is no statute of limitations on perjury when the testimony is given by a witness at a murder trial.

_____

[9] In ***Dietrich***, an appellant was convicted under the statute criminalizing false statements made "in connection with the purchase, delivery, or transfer of a firearm." ***Id.*** at *7; 18 Pa.C.S.A. § 6111(g)(4)(ii). The appellant had made a false statement while *attempting* to purchase a firearm, and we upheld his conviction stating, "[t]he term 'in connection with' connotes activity that is in relation to a purchase, delivery, or transfer of a firearm." ***Id.*** at *8. We did not interpret the statute as requiring the purchase be completed. ***Id***.

A crime is committed "in connection with" another crime if it "aris[es] from the same nucleus of operative fact." ***Commonwealth v. Russell***, 938 A.2d 1082, 1089 (Pa. Super. 2007). While criminal caselaw defining "the same nucleus of operative fact" is scant, Pennsylvania courts have previously determined that "'[t]he same facts' means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes transactions or encounters." ***Commonwealth v. Rodriguez***, 673 A.2d 962, 967 (Pa. Super. 1996).

For example, a series of charges brought against a defendant for distributing a controlled substance through many different transactions over a period of months would be considered to have arisen out of the same factual nucleus because the illegal conduct would have constituted a single criminal episode subject to compulsory joinder had all of the charges been filed at one time. ***See, e.g., Commonwealth v. Rocco***, 544 A.2d 496, 500 (Pa. Super. 1988). A more obvious example of arising out of "the same facts" would be when a defendant commits multiple felonies, such as arson and homicide, in a single criminal episode. ***See, e.g., Russell, supra***. When multiple offenses are committed as part of an ongoing series of planned incidents carried out by a single defendant or a defendant along with co-defendants or co-

conspirators, the crimes arise out of the same criminal occurrence. **See Commonwealth v. Sirbaugh**, 500 A.2d 453, 459 (Pa. Super. 1985).

This Court has interpreted similar phrasing in the civil context: "arising out of the same transaction or occurrence" involves "a common factual background or common factual or legal questions." **Stokes v. Local Order of Moose Lodge No. 696**, 466 A.2d 1341, 1345 (Pa. 1983). We have stated that "[w]here the evidence that would establish one complaint is distinct from the evidence that would establish the other complaint, the complaints do not arise from the same transaction or occurrence." **Hineline v. Stroudsburg Elec. Supply Co.**, 586 A.2d 455, 457 (Pa. Super. 1991).

Amalgamating the above instructive caselaw, we find that the exception to the five-year statute of limitations for felonies committed "in connection with" a murder is intended for felonies that occurred at the same time as a murder during the same criminal episode; that occurred as part of the same criminal scheme(s), plan(s), or transactions(s) as the murder; or that involved a common basis of operative facts as the murder. Where the facts surrounding the commission of a murder and the facts surrounding the commission of a felony could reasonably or arguably be charged in the same complaint, the crimes can be considered "in connection with" one another. While it is not a requirement that the same individual commits both the murder and the felony in connection with it, any other involved individual will generally be a co-conspirator, co-defendant, accessory, or accomplice.

In the instant case, there is no assertion that Appellee and Claitt were co-conspirators or co-defendants in the shooting such that Claitt lied as part of the same criminal plan, scheme, transaction or encounter. The alleged perjury obviously did not occur at the same time or in the same criminal episode as the murder. It cannot be reasonably argued that the murder and the perjury could have been charged in the same complaint or tried in the same prosecution. There is no evidence indicating Claitt knew of and participated in the shooting for which Appellee was charged. Thus, we find that the exception to the statute of limitations for felonies committed "in connection with" a murder in 42 Pa.C.S.A. § 5551(4) was not intended to apply to the instant circumstance.

Accordingly, we find that Claitt could not have been subject to civil or criminal liability for stating in 2016 that he lied during Appellee's 1980 trial because the statute of limitations on perjury had run. Thus, the second prong of the statement against interest exception to hearsay has not been met. The PCRA court therefore erred in considering Claitt's statements which constituted hearsay.

While our analysis can stop there, we will briefly discuss the last prong of the statement against interest analysis; whether there are corroborating circumstances clearly indicative of the statement's trustworthiness. "Recantation testimony is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury." ***Commonwealth v. Padillas***,

997 A.2d 356, 366 (Pa. Super. 2010), appeal denied, 14 A.3d 826 (Pa. 2010) (citation and internal quotation marks omitted).

Reliability is determined by referring to the circumstances in which the declarant gave the statement, *not by reference to other corroborating evidence presented at trial*. **Commonwealth v. Robins**, 812 A.2d 514 (Pa. 2002). The factors a court might consider in determining the reliability of inculpatory or exculpatory statements are as follows:

> the circumstances under which the statements were uttered, including the custodial/non-custodial aspect of the setting and the identity of the listener; the contents of the statement, including whether the statements minimize the responsibility of the declarant or spread or shift the blame; other possible motivations of the declarant, including improper motive such as to lie, curry favor, or distort the truth; the nature and degree of the "against interest" aspect of the statements, including the extent to which the declarant apprehends that the making of the statement is likely to actually subject him to criminal liability; the circumstances or events that prompted the statements, including whether they were made with the encouragement or at the request of a listener; the timing of the statement in relation to events described; the declarant's relationship to the defendant; and any other factors bearing upon the reliability of the statement at issue.

*Id.* at 525-26.

Here, the PCRA court placed significant weight on Attorney Wolkenstein's testimony that she spoke with Helen Ellis who corroborated Claitt's statements, Tr. Ct. Op. at 8, and focused much of its analysis on Mickens' testimony, finding it corroborative of Claitt's statements. *Id.* at 20-22. However, while the PCRA court very well may have found Attorney Wolkenstein and Mickens credible, and we do not disturb the PCRA court's

credibility findings, the court should have only referred to the circumstances in which Claitt gave his statement. **Robins, supra**. The court, however, failed to engage in a meaningful discussion about the reliability of the circumstances in which Claitt made his recantation in Attorney Wolkenstein's car in her presence. We further find that the PCRA court made a relevant statement undermining its own credibility finding; the court stated on the record that it did not believe everything contained in Claitt's recantation, and that part of his statements could not be verified as true of false. N.T., 2/28/24, at 7. Accordingly, the reliability of Claitt's statements was not properly assessed.

Finally, we note that a sexual misconduct case cited by the PCRA court, **Commonwealth v. Lester, infra**, works against the court's conclusion. In **Lester**, similar claims were made by the petitioner about being coerced to make false statements for sex. There we found the evidence reliable and granted a new trial. However, in that case, the petitioner who claimed to have been coerced by the detectives testified to the coercion and the sexual rendezvous, and all three women who were alleged to have had sex with him while in custody testified at the hearing. **Lester**, 572, A.2d 696, 698. This is distinguishable from here where neither the witness who claimed to have lied in Appellee's case in exchange for sex nor the women who he alleged slept with him testified. Instead, Claitt and Helen Ellis admitted these facts to Attorney Wolkenstein only and never testified at a hearing for Appellee. This

is a substantial distinction in the reliability of the statements between **Lester** and the instant case.

The order of the PCRA court is vacated and the case is remanded for proceedings to determine if Appellee's claims of **Brady** violations and after-discovered evidence merit relief under the PCRA. The evidence admitted at further proceedings must be consistent with this opinion.

Order vacated.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/7/2025